IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY L. BUTTON, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 3558 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner | ) | Magistrate Judge |
| of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Stacey Lynn Button ("Claimant") brings this action under 42

U.S.C.§ 405(g) seeking reversal or remand of the decision of Respondent Michael J.

Astrue, Commissioner of Social Security ("Commissioner"), in which the Commissioner

denied Claimant's application for disability insurance benefits. The matter is before the

Court on the parties' cross-motions for summary judgment [Dkt.##16, 21]. Claimant

argues that the Administrative Law Judge's ("ALJ") decision denying her application for

disability benefits should be reversed outright or, alternatively, should be vacated and

remanded to the Social Security Administration ("SSA") for further proceedings.  In

support of her motion for summary judgment, Claimant argues that the ALJ (1) failed to

explain why Claimant did not meet or equal Listing 14.02 for Lupus; (2) inappropriately

weighed the evidence; (3) made an unsupported credibility finding; and (4) gave a flawed

hypothetical to the vocational expert.

For the reasons discussed below, Claimant's motion for summary judgment is granted [Dkt.#16], and the Commissioner's motion is denied [Dkt.#21]. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

## I.  BACKGROUND

### A.    Procedural History

Claimant filed an application for disability benefits on October 7, 2008 in which she alleged a disability onset date of July 1, 2008. R.10, 140-157.  The SSA initially denied her application. R.10, 28, 64-65. Claimant then filed a request for reconsideration on November 13, 2008 (R.78-79), which the SSA denied on February 24, 2009. R.10. Thereafter, Claimant filed a written request for a hearing before an ALJ.  R.101-107.  On February 1, 2010, Claimant appeared with her attorney Timothy White and testified at a hearing before ALJ Curt Marceille. R. 28-53. Vocational expert Richard Fisher also appeared and testified at the hearing. R.53-63. No medical expert testified at the hearing.

On May 5, 2010, the ALJ issued his decision finding that Claimant had not been under a disability within the meaning of the Social Security Act from July 1, 2008 through the date of his decision. R.10.  Specifically, the ALJ found that Claimant had severe impairments, including systemic lupus and alopecia with resulting fatigue and concentration problems. R. 12. The ALJ concluded, however, that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R.13. The ALJ also

concluded that Claimant has "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that involves lifting and carrying up to 10 pounds frequently and 20 pounds occasionally; sitting 3 hours at one time without interruption; standing 1 hour at one time without interruption; and walking for 2 hours at one time without interruption; sitting, standing and walking each for 6 hours of an 8-hour workday; frequent bilateral reaching in all directions including overhead; frequent handling, fingering, and pushing or pulling; only occasional feeling with the left hand, but continuous feeling with the right hand; occasional climbing of stairs and ramps, kneeling, crouching or crawling; never climbing ladders, ropes or scaffolds; and frequent balancing and stooping; occasional exposure to extremes of cold and heat; and only occasional exposure to excessive vibration; no use of, and no exposure to, moving machinery or automobiles; and no exposure to unprotected heights." R.13-14.

On July 7, 2010, Claimant filed a request with the Appeals Council for review of the ALJ's decision. R.136-139. On March 23, 2011, the Appeals Council denied Claimant's request for review of the ALJ's decision, making the ALJ's determination the final decision of the Commissioner. R.1-3. Claimant seeks review in this Court pursuant to 42 U.S.C.§ 405(g).

**B.	Hearing Testimony – February 1, 2010**

**1. Claimant Stacey Button**

At the time of the hearing, Claimant was 30 years old, married with two children and pregnant with her third child. R.31-32.  Claimant graduated from high school and attended cosmetology school. R.33. Claimant testified that she was last employed part-time as a hair stylist in 2008. R.33. She testified that she stopped working because she had lost several clients when she was on maternity leave and because of fatigue. R.33. Claimant testified that she did not look for any other less strenuous work and stayed at home to take care of her children. R.34.

Claimant testified that she suffers daily fatigue and that her mother helps her take care of her children. R.34. Additionally, Claimant testified that she also suffers from severe joint pain in her hips and hands requiring cortisone injections once every three months to manage the pain. R.35.  Claimant testified that she also has a hard time concentrating. R.43. She testified that she does minimal work around the house and that her husband and mother help her care for the children and take care of the household chores, including washing dishes, laundry and grocery shopping. R.41-43. Regarding her physical capabilities, Claimant testified that she could walk for 10 to 20 minutes before needing to stop, stand for 20 minutes and sit for 30 to 45 minutes before her hip joints become painful. R.39. She also testified that the pain in her hands was severe and that she could not lift anything over a few pounds. R. 39.

**2. Vocational Expert Testimony**

Richard Fisher testified as a vocational expert ("VE") at the hearing and identified Claimant's past work as a receptionist, which is semi-skilled and sedentary, and as a cosmetologist, which is skilled and light. R.10, 54. Based on a hypothetical posed by the ALJ which assumed an individual with Claimant's age, education and work experience who is limited to simple repetitive and routine light work, the VE testified that an individual with those limitations could not perform Claimant's past relevant work but could perform other jobs in the national economy such as a cashier, routing clerk and sales attendant. R.54.

A second hypothetical posed the following: an individual limited to three hours of sitting without interruption, two hours walking without interruption, and removal of the unskilled requirement. R.55. Again, the VE testified that Claimant's past work was unavailable, but he identified other work as a receptionist, cashier, production worker, assembler of small parts and office machine operator. R.55-57. In a third hypothetical, the ALJ assumed the previous non-exertional limitations and also incorporated a sedentary limitation with a sit/stand option. R.57. The VE responded that such limitations still would leave work as a cutter/paster/press clippings, document preparer, microfilm, office clerk, or paramutual ticket checker. R. 57-58.

On cross examination, the VE admitted that an individual with greater limitations, including (1) an individual who was limited to standing, sitting or walking for one hour or less and could not perform minimal lifting during an 8 hour work day, (2) an individual who had to miss work more than one day per month, (3) an individual who had to take

5

more than 15 minutes of time off task in addition to regularly scheduled breaks or (4) an individual who had to lie down during the day, would not be able to work. R.62-63.

## C.    Medical Evidence

Claimant suffers from severe fatigue, concentration deficiencies, photosensitivity, an autoimmune deficiency, arthralgias, and pain in her joints and has been diagnosed with lupus. R.342, 447, 499. Additionally, Claimant has a history of seizures and continues to suffer from severe bouts of dizziness. R.354-355.

### 1. Dr. Margo Wolf – Claimant's Treating Physician

Dr. Margo Wolf treated Claimant in 2006 and 2007. Her records confirm that Claimant suffered from tiredness and fatigue. R.650-62.  Dr. Wolf also observed how the "symptoms [were] gradual," "worsening," and included: "diaphoresis, dizziness, anxiety, depression, hypoglycemia, trembling, [and] weight gain." R.652. Dr. Wolf indicated that the severity of the fatigue was "moderate" and that it occurred "frequently." *Id*.

### 2. Dr. Sakeba Issa – Claimant's Treating Physician

Dr. Sakeba Issa has been Claimant's treating rheumatologist since 2007. On November 26, 2007, Dr. Issa diagnosed Claimant with lupus. R.342. Dr. Issa observed that Claimant suffered "fatigue, arthralgias and photosensitivity" for two years prior to her visit on November 26, 2007. *Id*. Treatment notes also revealed that Claimant had

"discrete lesions on her scalp with alopecia."[1] *Id.* Dr. Issa was also "concerned about the white matter lesion in her brain" as it may be a strong indicator of multiple sclerosis. *Id.*

On March 24, 2008, Dr. Issa's notes revealed Claimant to be suffering from fatigue, depression, hair loss, pain in her joints, and numbness/tingly feelings in extremities. R.344-45. On June 23, 2008, Claimant was noted to have experienced weight gain, rashes, tingling in extremities, and was "fully fatigued." R.346-47. In addition to fatigue and malaise, hospital emergency room records from September 25, 2007 also show Claimant suffering severe pain in her pelvic and lower back regions. R.394. On October 8, 2007, a growth on Claimant's pituitary gland was confirmed. R.358-59, 382-83, 393-97. Claimant also tested positive for elevated levels of ANA, indicative of an autoimmune disorder. R.359.

Dr. Issa completed an Arthritic Report sent to him by SSA on December 29, 2008. In that Report, Dr. Issa stated that Claimant's condition probably began in 2005, but was not diagnosed until November 2007. R.499-502. Dr. Issa also confirmed the existence of "generalized" pain, tender points, generalized stiffness, fatigue, and malaise. R.501-02.

Dr. Issa also completed a "physical capacities assessment" dated April 14, 2009, in which he indicated that Claimant's impairments were impacting her physical capabilities. R.555-56. Notably, Dr. Issa opined that Claimant was limited to two hours or less of

---

[1] Dr. Todd Davis is a dermatologist who treated Claimant in July 2009 for dermatitis of the scalp and removed a skin lesion, which was benign. R.612-13, On October 22, 2009, Dr. Davis also confirmed the presence of skin rashes on her head which is a common symptom of lupus. R.610.

standing, walking, or sitting in a work environment with the ability to lift only 10 pounds, marked limitations in posturals, and moderate manipulative limitations as well as limitations around moving machinery and temperature extremes. *Id.*

Finally, in a letter dated January 5, 2010, Dr. Issa confirmed Claimant's diagnosis of lupus and emphasized that based upon his extensive treatment and expertise in rheumatology, he felt that Claimant "had very limiting fatigue that has kept her from being able to do much." R.587. Additionally, Dr. Issa reiterated that Claimant was severely limited in her ability to sit and stand due to arthralgias and myalgias causing "pain and stiffness." *Id.*

### 3. Dr. Nitin Nadkarni – Claimant's Treating Physician

Dr. Nitin Nadkarni's records also confirm that Claimant suffered from "passing out spells," frequent "blackouts,"and "lightheadedness," and on May 3, 2006, he confirmed a seizure disorder. R.354-56. Dr. Nadkarni ordered and administered a CT scan of Claimant's pituitary gland on September 23, 2008, revealing a 7 mm pineal cyst present on her pituitary gland and that "a tiny foci of T2 signal abnormality seen in the periventricular white matter." R.424. On October 14, 2008, Dr. Nadkarni found Claimant to have "paresthesias of the arms and face." R.594. Then, Claimant had another positive ANA test on November 6, 2008. R.447.  On January 6, 2009, Dr. Nadkarni observed that Claimant had "paresthesias of the hands and spells of dizziness," and that an MRI of her brain "show[ed] white matter lesions." R.595. In addition to dizziness and paresthesia of the hands, on March 31, 2009, Dr. Nadkarni noted "pituitary microadenoma;" "white

matter lesions;" "abnormal spinal fluid…suggestive of demyelinating process;" "hyperreflexia in the arms;" "mild gait difficulty;" and lupus. R.596.

### 4. State Agency Reviewing Physician

On November 6, 2008, non-examining State agency physician Dr. Barry Free concluded that Claimant had non-severe seizures. R.493-95.

### 5. Dr. Carl Leigh – Non-Examining Medical Expert

On July 28, 2009, Dr. Carl Leigh, who is an internist, answered an interrogatory based solely on his review of Claimant's medical file. R.571-73. Despite acknowledging Claimant's diagnosis of lupus and her history of a seizure disorder, Dr. Leigh opined that Claimant did not meet or equal any impairment, but suffered from "severe fatigue" and was obese. R.571-73. He then completed a Medical Source Statement in which he opined that Claimant could perform light work with an ability to sit 3 hours at a time, stand 2 hours, and walk one hour at a time, frequently reach, handle, finger, balance, and stoop, but only occasionally feel with her left hand, climb stairs, kneel, crouch, crawl, and never climb ladders as well as precluding her from driving and work around hazards. R.574-80.

### D. The ALJ's Decision

On May 5, 2010, ALJ Curt Marceille issued his decision finding that Claimant has not been under a disability within the meaning of the Social Security Act from July 1, 2008 through the date of his decision. R.10. At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since July 1, 2008, the alleged onset date. R.12.

At step two, the ALJ found that Claimant has severe impairments, including systemic lupus and alopecia with resulting fatigue and concentration problems. R. 12.

At step three, however, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R.13. Specifically, the ALJ concluded that Claimant's "systemic lupus does not precisely satisfy the diagnostic criteria of Listing 14.02, *Systemic lupus erythematosus*, or any impairment in the Listing of Impairments." R.13.

The ALJ then considered Claimant's residual functional capacity and concluded that Claimant has "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that involves lifting and carrying up to 10 pounds frequently and 20 pounds occasionally; sitting 3 hours at one time without interruption; standing 1 hour at one time without interruption; and walking for 2 hours at one time without interruption; sitting, standing and walking each for 6 hours of an 8-hour workday; frequent bilateral reaching in all directions including overhead; frequent handling, fingering, and pushing or pulling; only occasional feeling with the left hand, but continuous feeling with the right hand; occasional climbing of stairs and ramps, kneeling, crouching or crawling; never climbing ladders, ropes or scaffolds; and frequent balancing and stooping; occasional exposure to extremes of cold and heat; and only occasional exposure to excessive vibration; no use of, and no exposure to, moving machinery or automobiles; and no exposure to unprotected heights." R.13-14.

At step four, the ALJ concluded that, based on her RFC, Claimant could not perform her past relevant work. R.18. At step five, the ALJ considered Claimant's age, education, work experience and residual functional capacity and determined that Claimant is capable of performing other work. R.18-19. Therefore, the ALJ concluded that Claimant was not disabled. R.19-20.

## II. LEGAL STANDARD

### A. Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate

discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the ALJ's findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.    Disability Standard

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her

previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of her motion for summary judgment: (1) whether the ALJ properly determined that Claimant did not meet or equal Listing 14.02 for Lupus; (2) whether the ALJ reasonably weighed the evidence; (3) whether the ALJ properly analyzed Claimant's credibility; and (4) whether the ALJ gave a flawed hypothetical to the VE.

## A.  The ALJ Failed to Properly Determine Whether Claimant Met or Equaled Listing 14.02 for Lupus[2]

---

[2] At step three in the five-step sequential analysis utilized in evaluating whether a claimant is disabled, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems,

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.2004). An ALJ is required to "meaningfully discuss why a claimant does not medically meet a Listing and failure to engage in such an analysis is grounds for reversal." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (requiring a thorough listing analysis subject to reversal for an ALJ who does not adequately address evidence favorable to the claimant).

Here, although the ALJ identified the specific Listing for lupus, he simply asserted in one sentence that Claimant did not "satisfy precisely" Listing 14.02 for lupus with no stated rationale or discussion to support that conclusion. This is not enough. *See, e.g., Sorenson v. Astrue*, 2011 WL 1043362, at * 9 (E.D. Wis. 2011). The Seventh Circuit has held that when an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required. *See Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir.2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir.2002); *Steele v. Barnhart*, 290 F.3d 936, 940-41 (7th Cir. 2002).

---

impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to step four.

The Commissioner argues that there was sufficient evidence in the record for the ALJ to have concluded that Claimant did not have the "moderate level of severity" of any organ/body system to meet the requirements of Listing 14.02(A) or the "marked level of limitation" on activities of daily living required to meet the requirements of Listing 14.02(B).   In some cases, it can be appropriate to dig into the record and better connect the "dots" – the factual analysis that appears elsewhere in an ALJ's decision – when it is clear what the ALJ meant rather than remand if the result on remand appears certain.  In *Rice v. Barnhart*, the Seventh Circuit concluded that "it is proper to read the ALJ's decision as a whole," and "it would be a needless formality to have the ALJ repeat substantially factual analyses" at multiple steps of the analysis. 384 F.3d 363, 370 n.5 (7th Cir. 2004).  That is not the case here, however.  We decline to speculate what the ALJ would have said had he actually memorialized the analysis of the record evidence that the Commissioner argues it is possible that he engaged in here.  The evidence discussed by the parties in their briefs is sufficiently nuanced and disputed that the Court cannot, and should not, engage in the close analysis of that evidence that, in the end, may or may not support the ALJ's summary conclusion that Claimant's condition does not meet or equal a specified listing.

In particular, the Commissioner attempts to bolster the ALJ's decision in step three of his decision by arguing that the ALJ, later in his decision, cites favorably to Dr. Carl Leigh, a consulting non-treating internist.  As the Commissioner notes, Dr. Leigh opined that Claimant did not meet Listing 14.02 in written answers to a medical interrogatory.

Commissioner's Br. [Dkt.#22], at 4-5. But the ALJ never references Dr. Leigh's opinion as to whether Claimant meets or medically equals the listing for lupus. His reference to Dr. Leigh is in the context of his later discussion at step four of his analysis of Claimant's residual functional capacity. It is clear from his decision that the ALJ preferred Dr. Leigh's opinion as to the severity of Claimant's condition to the views expressed by Claimant's treating physicians. The weight that should be afforded Dr. Leigh's opinion on that subject, however, is hotly disputed by the parties. As discussed below, Claimant argues that Dr. Leigh did not have all of Claimant's medical records when he reviewed her file and that the ALJ was wrong to credit Dr. Leigh's non-treating opinion over the findings and views of Claimant's treating physicians that, according to Claimant, are fully-supported by her medical records.

Under these circumstances, we cannot uphold the ALJ's determination that Claimant did not meet or medically equal a listed impairment based upon an assumption that the ALJ *sub silentio* agreed with or adopted Dr. Leigh's opinion on that issue in step three of his analysis. If the ALJ relied upon Dr. Leigh's "opinion" in answer to a written interrogatory as to whether Claimant meets or medically equals the listing for lupus to overcome other medical evidence in the record at step three of his analysis, then he should have said so and explained his reasoning. It is particularly important for the ALJ to have done so here because a determination favorable to Claimant at step three of the analysis would end the inquiry and result in a finding of disability. *See* footnote 2 above. The ALJ's failure to explain fully his contrary decision makes it impossible for the Court

to review that decision to see if it is supported by the requisite logical bridge. *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010).

Neither the Commissioner nor the Court can rely to the extent postulated by the Commissioner on an argument or rationale not asserted by the ALJ. As such, the ALJ decision is vacated for his failure to meaningfully discuss why Claimant did not meet or equal Listing 14.02, and the case is remanded to the SSA for specific consideration and explanation of whether Claimant meets or equals Listing 14.02 for Lupus.

**B.    The ALJ's Decision To Reject Opinion Evidence From Claimant's Treating Physicians Is Not Sufficiently Explained**

An ALJ makes a RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, he must determine what weight to give the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527. A treating physician's opinion is entitled to controlling weight if it is supported by the medical findings and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). A contradictory opinion of a non-examining physician is not, by itself, sufficient for the ALJ to reject an examining physician's opinion. *Gudgel,* 345 F.3d at 470. So long as the ALJ "minimally articulates [his] reasons," he may discount a treating physician's opinion if it is inconsistent with that of a consulting physician or other substantial medical evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer

controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). However, when an ALJ fails to credit a treating physician's opinion, he must at least minimally discuss the reasons that lead him to that result. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

A central issue in this case is that the ALJ rejected and discounted the opinions of Claimant's treating physicians – Dr. Issa and Dr. Nadkarni. The ALJ did so largely on the basis of the opinion of a non-treating physician, Dr. Carl Leigh, and the ALJ's own examination of the treating physicians' notes and records of their interactions with Claimant. The ALJ and Dr. Leigh examined Claimant's medical records and her physicians' treatment notes and concluded that the treatment notes did not always support the treating physicians' expressed opinions about the severity of Claimant's condition or that information that would lead to those conclusions was lacking in the clinical record.

For example, Dr. Leigh acknowledges that Claimant "has severe fatigue" but he says there is a lack of significant objective findings and information in the medical records. R.572. He notes that Claimant's arthritic report is checked for malaise "but this is not supported in the progress notes." *Id.* Similarly, the ALJ notes that Dr. Issa, Claimant's treating rheumatologist, opined that Claimant "got progressively worse," but according to the ALJ, "no evidence of worsening of her condition is in his notes." R.17. The ALJ also noted supposed inconsistencies in Dr. Issa's opinion because "while he indicates progressive limitations, his treatment notes fail to document a worsening condition." *Id.*

18

The ALJ also takes issue with Dr. Issa's failure "to provide more aggressive treatment which would be expected given the degree of complaints alleged by the claimant." R.17. And he disagrees with the manipulative limitations Dr. Issa assigns to Claimant given what the ALJ says is "the lack of any problems with the use of the hands noted in [Dr. Issa's medical questionnaire]." *Id.* By contrast, the ALJ asserts that Dr. Leigh's report is "well-supported and consistent with the record in its entirety. Thus, great weight is accorded to his findings and conclusions." R.18.

As noted above, however, the gravamen of Dr. Leigh's opinion seems to be that Claimant's treating physicians' opinions are not supported by the treatment and progress notes. *See, e.g.,* R.572 ("The claimant has severe fatigue but there is a lack of information re fever, or involuntary weight loss; R.573 ("The Arthritic Report reflecting 10/20/08 indicates myofascial tender points, generalized stiffness, fatigue, malaise (the progress notes do not support this), no manipulative limitations and normal gait.") It is hard to escape the conclusion that the ALJ substituted his opinions for those of Claimant's treating physicians and that he did so by relying upon a non-treating physician, Dr. Leigh, whose main point is not that Claimant's treating physicians' opinions were wrong but that he could not find enough evidence in their treatment notes to support those opinions.

This is a case in which the ALJ needed to solicit additional information from Claimant's treating physicians, or even request that Claimant be examined by a medical expert who would be present at the hearing and subject to examination and cross-

examination. "An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett,* 381 F.3d at 669; 20 C.F.R. §404.1527(c)(3); *see also* SSR 96-5p ("Because treating source evidence, (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.") In this case, the ALJ should have sought additional information from Claimant's treating physicians before rejecting their opinions because, in large part, he felt those opinions were not consistent with their treatment notes and objective findings.

Moreover, in her opening brief, Claimant points to a host of references in Claimant's medical records that are not discussed by the ALJ or by Dr. Leigh. Plaintiff's Memorandum In Support of Summary Judgment or Remand ("Claimant's Opening Brief") [Dkt.#17], at 13, n.11. For example, in a case in which Claimant's residual functional capacity and whether she is suffering from fatigue and malaise so as to meet or medically equal Listing 14.02 are key issues, Dr. Issa characterized Claimant as suffering from "limiting fatigue and lupus fog" that "has kept her from being able to do much." R.587. Moreover, Dr. Issa makes this statement in a letter that Dr. Leigh did not have when he rendered his non-examining opinion because the statement was in certain of Claimant's medical records submitted after the hearing, and Dr. Leigh was not asked to consider those records. Claimant's Opening Brief [Dkt.#17], at 12. This is just one of the

circumstances in which the ALJ should have, at a minimum, sought additional clarifying information from Dr. Issa. Having not engaged in the required inquiry, the ALJ did not have a solid basis to reject the treating physicians' opinions in favor of Dr. Leigh's non-examining opinion, and he effectively substituted his own judgment for that of the treating physicians. This he cannot do. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Further, the ALJ did not engage in any discussion of Claimant's limitations due to her constant fatigue, as discussed more fully below, which supports her treating physician's diagnosis, treatment and opinions. This is not to say that the Court believes there is no set of facts or reasoning that could lead the ALJ to the conclusions he reached. But more was required here to reach those conclusions in a way that would permit this Court to conduct a meaningful review. The ALJ failed to build crucial pieces of the logical bridge that must be built to support his decision to reject Claimant's treating physicians' opinions as well as his ultimate determination as to Claimant's RFC. On remand, the ALJ should solicit additional clarifying information from Dr. Issa and such other of Claimant's treating physicians as he deems necessary in those situations in which the medical record is deemed wanting, inconsistent or unclear.

## C. On Remand, the ALJ Should Revisit the Issue of Claimant's Credibility

An ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The ALJ has the

discretion to discount testimony on the basis of evidence in the record. *Johnson v. Barnhart*, 449 F.3d 431, 435-36 (7th Cir. 2000). However, the basis for the ALJ's credibility determination must be articulated and "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given. SSR 96-7p.

Here, the ALJ failed to evaluate Claimant's testimony at the hearing about the persistence and intensity of her fatigue and her frequent inability to care for her children and to perform household chores. The ALJ did not address any of Claimant's testimony about her fatigue and difficulty performing some daily activities in conjunction with his analysis of the medical evidence. Taken at face value, Claimant's testimony is contrary to the ALJ's conclusion that she has the ability to perform light work. An ALJ is required to cite specific reasons for rejecting Claimant's testimony about her pain and fatigue. SSR 96-7p. That was not done here.

The ALJ held that the "claimant's statements are not credible to the extent they are inconsistent with" his RFC assessment. R.17. Such language, however, has been deemed "meaningless boilerplate" and criticized for providing "no clue" as to the weight the ALJ gave a claimant's testimony. *Martinez et. al. v. Astrue*, 630 F.3d 693 (7th Cir. 2011) (rejecting boilerplate credibility determinations); *Parker et. al. v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness' testimony is "not entirely credible" yields no clue to what weight the trier of fact gave the testimony."); *Mendez v. Barnhart*, 439 F.3d

360, 363 (7th Cir. 2006) (indicating that a partially credible determination that the person is credible, but not to the extent alleged, is an odd finding and unclear in meaning). The criticisms identified in *Parker* are particularly true in this case when, at one point in his opinion, the ALJ asserts that Claimant's claims are "not credible" (R.17) yet confusingly states on the next page that he finds "claimant's testimony . . . most credible." R.18.

It is not clear from the ALJ's opinion that he ever specifically addressed and analyzed the factors listed in SSR 96-7p. The ALJ simply stated, when dismissing Dr. Issa's opinion, that Claimant did not receive treatment that befits one who is disabled. R.17. Clearly, one of the reasons given by the ALJ for his decision to reject Claimant's reports of persistent fatigue appears to be that Claimant had not sought sufficient treatment. R.17. ("Given the purported worsening in symptoms, it would be expected that claimant would see Dr. Issa more frequently to treat such symptoms, yet treatment notes appear to reflect only regularly scheduled visits. . . ."). However, SSR 96-7p expressly provides that an ALJ "must not draw inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatments." SSR 96-7p.

In this case, the longitudinal record shows that Claimant has pursued medical treatment for her fatigue and currently is being seen by her doctors at a minimum every three months. R.15. Although the ALJ explicitly drew inferences about Claimant's

23

course of treatment, there is no evidence that the Claimant actually required additional treatment or should have sought additional care. The record shows that Claimant was receiving medication from Dr. Issa in addition to steroid treatments for flare-ups, participated in a sleep study, and had tests performed to support a diagnosis of lupus. R.342-47, 626-31. It is unclear what additional treatment the ALJ thought was lacking. The record is undeveloped in this area, and the ALJ failed to build the requisite logical bridge for his decision to reject Clamant's course of treatment.

Thus, for all of these reasons, it is necessary to remand the case to allow the ALJ further opportunity to explain the basis for his adverse credibility determination and, possibly, to further develop the record.

**D.     It Is Pointless to Determine Whether the ALJ's Hypothetical to the Vocational Expert Was Based Upon An Insufficient RFC Finding**

Claimant argues that the ALJ erred in assessing the medical evidence, specifically the opinions of her treating physicians and her fatigue, when calculating her RFC, and therefore, the ALJ's hypotheticals to the VE were flawed factually with regard to her RFC. In such a situation, when the ALJ's hypothetical to the VE is based upon an insufficient RFC, the case must be remanded to the SSA for further proceedings. *Young v. Barnhart*, 362 F.3d 995, 1004-05 (7th Cir. 2004).

Here, the ALJ's hypotheticals to the VE clearly were based on the medical expert's RFC assessment. R.13-14. For the reasons discussed in Sections A, B and C of this Memorandum Opinion, *supra*, the ALJ failed to account for all of the relevant evidence in

making his step three and step four findings and his credibility determination. To the extent that, on remand, the ALJ may re-evaluate his findings and modify any hypothetical he gives to the Vocational Expert, in depth review of the ALJ's hypothetical to the Vocational Expert during the earlier hearing would be moot. Any other determination at this point would be premature and potentially useless. Therefore, the Court declines to address Claimant's attack on the ALJ's hypothetical to the Vocational Expert on the present record and remands the case for a more careful development of a factual record needed to support any hypothetical given to a Vocational Expert on remand.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Stacey Button's motion for summary judgment is granted [Dkt.#16], and the Commissioner's motion is denied [Dkt.#21]. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 30, 2012